# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| | } | |
| BOBBY D. LUCKY, SR. | } | CASE NO. 07-81938-JAC-13 |
| SSN: XXX-XX-1598 | } | |
| | } | |
| Debtor(s). | } | |
| | | |
| EVANS TRUCK SALES, INC. | } | A.P. No. 07-80112-JAC-13 |
| | } | |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| BOBBY D. LUCKY, SR. | } | |
| | } | |
| Defendant(s). | | |

## MEMORANDUM OPINION

On July 23, 2008, this matter came before the Court for trial on the complaint filed by Evans Truck Sales, Inc., against the defendant, Bobby D. Lucky, Sr. ("Lucky, Sr.") under 11 U.S.C. §§ 523(a)(2)(A), (4) and (6). At the conclusion of the trial, the Court dictated findings of fact and conclusions of law into the record finding that Lucky, Sr. breached an agreement with Evans to provide the plaintiff with two new F-750 Ford Trucks equipped with grappling equipment. The Court further found under § 523(a)(2)(A) that Lucky, Sr. suppressed material facts from Evans and defrauded Evans by making material misrepresentations about his ability to complete and deliver the trucks upon which Evans justifiably relied. After the trial, the Court entered an interim order requiring Lucky, Sr. to immediately surrender the two Ford Trucks along with all attached equipment and improvements. The Court reserved the issue of damages to be determined separately.

The Court now makes the following findings of fact and conclusions of law in addition to those dictated into the record at the conclusion of the trial:

## *FINDINGS OF FACT*

1.  Lucky, Sr. is the president of two corporations, Lucky Hydraulics, Inc., and Lucky Manufacturing Co., Inc. When Evans filed the above styled complaint on October 30, 2007, Lucky, Sr. was the debtor in the above styled Chapter 13 case and both corporations were in bankruptcy: Lucky Manufacturing Co., Inc., case no. 07-81486-JAC-11; and Lucky Hydraulics, Inc., case no. 08-80719-JAC-11. Subsequently, on March 13, 2008, the Court entered an order granting trustee's motion to dismiss Lucky, Sr.'s Chapter 13 petition. After the Court dismissed the Chapter 13 petition, the Court entered an order to show cause why the above styled adversary proceeding should not be dismissed. By order dated March 28, 2008, the Court entered an order retaining jurisdiction over the adversary proceeding in conformity with the case of *In re Morris*, 950 F.2d 1531 (11th Cir. 1992) and based upon Lucky, Sr.'s continued involvement in the corporate Chapter 11 cases. While the Court has subsequently entered an order granting the bankruptcy administrator's motion to dismiss the Lucky Manufacturing case, the Lucky Hydraulics case remains pending.

2.  Bobby D. Lucky, II ("Lucky, II") is the son of Lucky, Sr. and is vice president of Lucky Hydraulics and Lucky Manufacturing. While he has authority to make contract proposals to prospective customers, Lucky, II testified that his father makes all corporate decisions and handles the money and accounts of both companies.

3.  While Lucky Manufacturing and Lucky Hydraulics are technically distinct entities, they share the same facility located in Huntsville, Alabama and the corporate identity of each

2

company is often blurred by Lucky, Sr. and his son. Although it appears that Lucky Hydraulics is not an active, on-going business, Lucky, Sr. testified that some customers still send payments to Lucky Hydraulics and Lucky Hydraulics is currently in bankruptcy. While the companies maintain separate phone numbers, it appears that any calls or business received by Lucky Hydraulics is actually handled by Lucky Manufacturing. Lucky Manufacturing is in the business of manufacturing, assembling and repairing heavy equipment.

4. In September of 2005, Evans Truck Sales, Inc. was working for Charles Ramey d/b/a Wholesale Salvage ("Wholesale Salvage") performing disaster relief cleanup services in Slidell, Louisiana related to damages caused by Hurricane Katrina. At the time, Evans had one truck and was using that truck to perform cleanup services for Wholesale Salvage on various contracts. Wholesale Salvage had several debris removal contracts with the state of Louisiana and was subcontracting the work to various subcontractors including Evans. Wholesale Salvage agreed to give Evans one of its most lucrative contracts to perform cleanup services along Highway 11 in Louisiana. To fulfill the contract, Evans needed to purchase two self-loading grapple trucks by October 5, 2005 to begin work the following day.

5. On or about September 19, 2005, Terry Evans, the president of Evans Truck Sales, Inc., contacted Lucky Manufacturing and spoke first with the defendant's son, Lucky, II. Evans explained that he was headed to New Orleans to perform disaster cleanup relief and needed to purchase two large, heavy duty trucks with the ability to pickup large amounts of debris. Evans explained that he needed the trucks to be ready for delivery within two weeks. Lucky, II informed Evans that they had two trucks in their possession and that they could have them ready for Evans in two weeks.

3

Case 07-80112-JAC    Doc 63    Filed 07/29/08    Entered 07/29/08 16:13:10    Desc Main
Document    Page 3 of 11

6. On September 19, 2005, Lucky, II forwarded Evans, by facsimile, proposal no. 91205BDL2 on Lucky Hydraulics letterhead for the sale and delivery of the two trucks, each equipped with a trash loader, grapple equipment, and a pump bed for the price of $250,000.00.

7. Evans testified that the $250,000 purchase price included a $5,000 expedited delivery fee. Although Lucky, II testified that there was never a definite delivery date for the trucks, the proposal provided in two separate places that the trucks could ready for delivery in two weeks. Evans explained that he was losing money everyday that he did not have the trucks available and operating in Louisiana cleaning debris.

8. Lucky, II testified that Lucky Manufacturing sent out similar proposal to hundreds of people. Lucky, II explained that following Hurricane Katrina, Lucky Manufacturing's business picked up and the company was getting 100 to 200 calls per day from its website with people asking if they had new or used equipment.

9. On September 20, 2005, Evans called and spoke with either Lucky, II or Lucky, Sr. to discuss the terms of the proposal and to verify the delivery date.

10. On September 21, 2005, Lucky, Sr. called Evans and informed Evans that he had a man in his office who was interested in purchasing the trucks offered to Evans in proposal 91205BDL2. Lucky, Sr. testified that he called Evans and told him that he had a man in his office willing to give him a $125,000 down payment for the trucks. Lucky, Sr. asked Evans for a $30,000 deposit, otherwise Lucky, Sr. would presumably sell the trucks to the man in his office. Evans told Lucky, Sr. that he would go to his bank and call him back within a short time. Evans then called Lucky, Sr. from the bank and countered with an offer of a $25,000 deposit based on 10% of the sales price for each truck provided Lucky, Sr. could assure Evans that the trucks could be delivered within

4

two weeks. According to Evans, Lucky, Sr. agreed saying "you get me the money and I will get you the trucks." Lucky, Sr. then gave Evans routing information to wire the money to the account of Bobby D. Lucky, Sr., d/b/a/ Lucky Manufacturing Co., Inc.

11.     Lucky, Sr. testified that the account number that he gave Evans is a business account for Lucky Manufacturing, but Lucky, Sr. can also draw money from the account as an individual.

12.     On September 21, 2005, Evans had his bank, Eastman National Bank ("Eastman") wire the agreed $25,000 deposit to Lucky, Sr., d/b/a Lucky Manufacturing Co., Inc. On the same date, Steve Linville, senior vice president of Eastman, sent a followup letter addressed to Bobby Lucky and Lucky Hydraulics stating that Eastman had approved financing to Evans for the purchase of the two grapple trucks described in the proposal and stated that the $25,000 was being wired to hold the vehicles per the parties' agreement.

13.     After entering into the agreement and accepting the deposit amount on September 21, 2005, Lucky, Sr. repeatedly promised, represented and assured Evans that the grapple trucks would be ready for delivery within two weeks on or before October 5, 2005.

14.     At the time Lucky, Sr. made these representations to Evans, the defendant had multiple truck assembly projects pending.

15.     Following the wire transfer, Evans repeatedly contacted Lucky, Sr. and/or Lucky, II to confirm that the trucks would be ready by October 5, 2005. Evans testified that he had two drivers coming from Oklahoma to pick up the trucks on October 5, 2005 who were to then drive the trucks to Louisiana to begin work on the Wholesale Salvage, Highway 11 contract. Evans wanted and received assurance that the trucks would be ready before he instructed his employees to make the trip to pick up the trucks. From September 22, 2005, the day after the parties entered into the

5

Case 07-80112-JAC    Doc 63    Filed 07/29/08    Entered 07/29/08 16:13:10    Desc Main
Document      Page 5 of 11

agreement, until October 5, 2005, Plaintiff's exhibit 35 reflects that Evans called Lucky, Sr. or Lucky Hydraulics, Inc. 10 times, speaking at length to Lucky, Sr. and his son on several occasions.

16. On October 5, 2005, the date the trucks were to be completed, Evans was informed that the defendant was having trouble getting certain parts for the trucks and needed an additional week to complete the work.

17. On October 5, 2005, Evans contacted Charles Ramey with Wholesale Salvage and obtained a one week extension on the Highway 11 contract. On the same date, Evans called Lucky, II to inform him that he received the one week extension and to verify that Lucky could have the trucks ready within the new deadline. Lucky, II assured Evans that the trucks would be ready by the following week. The new deadline for the trucks was October 12, 2005.

18. Although Lucky, Sr. had agreed to complete and deliver the two trucks by October 5, 2005, the evidence shows that the defendant did not actually purchase the trucks from Parkway Ford, the company supplying the chassis on which the equipment was to be attached, until October 5, 2005.

19. On October 4, 2005, Parkway Ford submitted an invoice to Evans' bank, Eastman National Bank, for the two trucks for $105,398.00 with Evans Truck Sales listed as the purchaser and Eastman National Bank listed as the lien holder. On the same day, Lucky, Sr. called Evans' bank and spoke with the vice president's secretary to find out if the bank had received Parkway's invoice and to ask if the bank could issue a check made jointly payable to Parkway and Lucky Manufacturing when the bank paid the invoice. Lucky Manufacturing had been holding the trucks since at least February of 2005 after a deal with another purchaser for the trucks fell through and it

appears that Parkway Ford had been pressing for payment. As a result of Lucky, Sr.'s call, Eastman National Bank issued payment on October 5, 2005, to Parkway Ford for $105,398.00. Evans was not aware at the time that Lucky, Sr. had contacted his bank and requested payment nor was he aware that Eastman had issued payment at Lucky, Sr.'s request.

20. On October 10, 2005 and October 11, 2005, Evans called Lucky, Sr. to follow up and make sure that the trucks would be ready for delivery by October 12, 2005. Evans was assured each time that the trucks would be ready.

21. On October 12, 2005, the defendant failed to deliver the trucks.

22. On October 13, 2005, Lucky, Sr. again promised that he could have the trucks ready in one more week. On October 19, 2005, Evans called and the trucks were still not ready and as a result, Evans lost its Highway 11 contract with Wholesale Salvage. On October 19, 2005, Evans asked for his $25,000 deposit back, but was informed by Lucky, Sr. that the deposit could not be returned because Evans' bank had already paid for the trucks. Evans did not know that his bank had paid for the trucks at Lucky, Sr.'s request until informed of the payment by Lucky, Sr.

23. Since October of 2005, Lucky, Sr. has refused to turnover the trucks to Evans or Eastman National Bank.

## CONCLUSIONS OF LAW

In the present case, the agreement between Evans and Lucky, Sr. constituted a valid and binding contract between the parties, whereby Lucky, Sr., acting individually and as president of both Lucky Hydraulics and Lucky Manufacturing, promised to deliver two grapple trucks to Evans within two weeks from the date the parties entered into the agreement on September 21, 2005.

7

Evans transferred the $25,000.00 deposit to Lucky, Sr. in consideration for the agreement on September 21, 2005 by wiring same at Lucky, Sr.'s direction to the account of Lucky, Sr. d/b/a Lucky Manufacturing Co., Inc. While this account is used as Lucky Manufacturing's business account, Lucky, Sr. testified that he can also withdrawn funds from the account for his personal use. Lucky, Sr. breached the September 21, 2005 agreement by failing to deliver the grapple trucks on or before October 5, 2005 and then within the additional periods Evans allowed the defendant to complete and deliver the trucks after Evans obtained an extension on the Highway 11 contract for which he needed the trucks. As a result of Lucky, Sr.'s breach of contract, Evans lost the Highway 11 contract with Wholesale Salvage. Accordingly, the Court finds that Evans has satisfied the elements for breach of contract in Alabama. *See In re Sharpe,* 2008 WL 2246932, *22 (Bankr. N.D. Ala. 2008).

The Court further finds that Lucky, Sr. is liable pursuant to 11 U.S.C. § 523(a)(2) for the damages he caused Evans to suffer. The Eleventh Circuit has found that the elements for a claim of fraud under § 523(a)(2)(A) are: (1) the debtor made a false representation with the intention of deceiving the creditor; (2) the creditor relied on the false representation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result of the false representation. *See In re Wood*, 245 Fed. Appx. 916, 918 (11th Cir. 2007).

In *Wood,* the Eleventh Circuit explained that the concept of false pretenses under § 523(a)(2)(A) is especially broad and includes intentional fraud or deceit practiced by whatever method and in whatever manner. False pretenses may also be implied from conduct or may consist of concealment or nondisclosure where there is a duty to speak and may consist of any acts, work,

8

symbol, or token calculated and intended to deceive. False pretenses contemplates a misrepresentation that is intentional or made with reckless indifference to the truth.

The Court finds that Lucky, Sr. entered into the agreement with Evans to provide the two grapple trucks within two weeks from the September 21, 2005 while knowing that he would not be able to perform the agreement when he entered into same on behalf of Lucky Manufacturing or Lucky Hydraulics and that he continued to misrepresent his ability to perform under the terms of the agreement while reassuring Evans that his companies could complete the contract. On September 21, 2005, Lucky, Sr. called Evans to close the deal on the proposal his son had offered Evans. After the parties negotiated the $25,000.00 deposit amount, Lucky, Sr. instructed Evans to wire the $25,000.00 deposit to the account of Bobby Lucky, Sr. d/b/a Lucky Manufacturing from which Lucky, Sr. could withdraw the funds for his personal use.

After the parties entered into the agreement and Evans wired the $25,000.00 deposit, Evans contacted Lucky, Sr. and Lucky, II on several occasions to verify that the defendant would be able to complete the trucks and both Lucky, Sr. and Lucky, II repeatedly assured Evans that they would have the trucks ready as promised. Plaintiff's exhibit 35 reflects that Evans called Lucky, Sr. or Lucky Hydraulics, Inc. beginning in September 19, 2005 through October 19, 2005 19 times, speaking at length on several occasions to either Lucky, Sr. or Lucky, II. Evans testified that he was repeatedly assured by both individuals during these phone conversations that the trucks would be ready first by the October 5, 2005 due date and then by the subsequent dates which coincided with the extensions Evans was able to obtain on the Highway 11 contract.

It is evident from Evans' testimony and based upon the number of phone calls Evans made to the defendant that the plaintiff made it clear that he needed this equipment as soon as possible and

9

at the very latest by the agreed upon delivery date. Lucky, II testified that Evans called the company every two or three days to check on the equipment often while waiting in line in at the Louisiana dump waiting to unload the one truck he was using to perform other contracts for Wholesale Salvage. The Court finds and believes that both Lucky, Sr. and Lucky, II understood that Evans was in immediate need of the additional trucks and that they certainly understood that he would have not agreed to purchase the trucks from Lucky Manufacturing or Lucky Hydraulics unless the defendant assured Evans that the trucks would be ready when Evans was to begin the Highway 11 contract.

After the defendant failed to complete the trucks by the October 5, 2005 deadline, Lucky, Sr. continued to assure Evans that he could complete the grapple trucks within the subsequent extension periods. By the end of the agreement period, the grapple trucks remained incomplete causing Evans to lose the Highway 11 contract. The Court finds that Lucky, Sr., made false misrepresentations about his ability and the ability of his companies to complete the trucks with no intent of delivery. These false representations were intentional or at least made with reckless indifference to the truth. Lucky, Sr. made these false representations with the intention of deceiving Evans to obtain the contract even though Lucky, Sr. knew that his company would be unable to complete the trucks by the required date. Evans lost the Highway 11 contract as a result of Lucky, Sr.'s false representations. At any point during the first two week deadline or during the subsequent extension periods had Lucky, Sr. truthfully represented his ability to complete the trucks, Evans could have sought to purchase the vehicles from another source. Instead, Lucky, Sr. intentionally misrepresented his abilities to perform in order to induce Evans to enter into the agreement and not turn to other sources.

Lucky, Sr. needed to find a purchaser for the two trucks which Lucky Manufacturing had been holding since February of 2005 after the deal with another purchaser fell through. He needed to pay Parkway Ford for the trucks as was evident from the call he placed to Evans' bank without Evans' knowledge which resulted in the bank releasing the funds to pay for the trucks. Based upon the forgoing, the Court concludes that the Lucky, Sr. suppressed material facts from Evans and defrauded Evans by making material misrepresentations about his ability to complete and deliver the trucks upon which Evans justifiably relied.

A separate order will be entered consistent with this opinion.

Dated: July 29, 2008

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

JAC/mhb
xc: Debtor(s)
 Douglas B. Hargett, attorney for plaintiff(s)
 Curtis L. Whitmore, attorney for defendant(s)
 trustee

11